UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN
(GREEN BAY DIVISION)

DANIEL J. RATAJCZAK, JR.,
ANGELA RATAJCZAK,
SCOTT A. RATAJCZAK, and
ELIZABETH RATAJCZAK,

Case No.: 1:13-cv-00045

Plaintiffs,

v.

BEAZLEY SOLUTIONS LIMITED,
BEAZLEY FURLONGE LIMITED,

Defendants.

## COMPLAINT

Plaintiffs Daniel J. Ratajczak, Jr., Angela Ratajczak, Scott A. Ratajczak and Elizabeth Ratajczak, by their attorneys Stephen E. Kravit and Mark M. Leitner of Kravit, Hovel, & Krawczyk, S.C., for their Complaint against the Defendants allege as follows:

### NATURE OF CASE

1. This is an action for declaratory judgment as to the extent and existence of insurance coverage provided by Defendants Beazley Solutions Limited, acting as appointed representative of Beazley Furlonge Limited, a United Kingdom insurer acting and managing on behalf of Lloyd's syndicates 623 and 2623 ("Beazley" or "Defendants"), under the terms of a Seller's Warranty and Indemnity Insurance Policy ("the Policy")[1] issued by Beazley to the Equity Interest Holders in Packerland

---

[1] Where capitalized terms appear in this Complaint that are not otherwise defined in this Complaint, those terms have the meaning stated in the Policy

Whey Products, Inc. ("the Sellers"). A true and correct copy of the Policy is attached to this Complaint as Exhibit A and incorporated herein by reference.

2. The Policy was issued by Beazley in order to provide the Sellers with insurance coverage arising from certain representations and warranties made by the Sellers in the Stock Purchase Agreement ("Acquisition Agreement") whereby Sellers sold their interests in Packerland Whey Products, Inc. ("Packerland Whey") to Packerland Whey Intermediary Holding Group, Inc. ("Buyer" or "Packerland Holding").

## PARTIES, JURISDICTION AND VENUE

3. Plaintiffs Daniel J. Ratajczak, Jr. and Angela Ratajczak are husband and wife, citizens of Wisconsin who reside at N7223 County Road AB, Luxemburg, Wisconsin 54217. Daniel and Angela both signed the Acquisition Agreement as Equity Interest Holders in Packerland Whey.

4. Plaintiffs Scott A. Ratajczak and Elizabeth Ratajczak are husband and wife, citizens of Wisconsin who reside at 362 Brookview Drive, Luxemburg, Wisconsin 54217. Scott and Elizabeth both signed the Acquisition Agreement as Equity Interest Holders in Packerland Whey.

5. Defendant Beazley Solutions Limited is, upon information and belief, a United Kingdom insurer with its principal place of business in London, England.

6. Defendant Beazley Furlonge Limited is, upon information and belief, a United Kingdom manager and/or insurer with its principal place of business

in London, England. Upon information and belief, no members of Lloyd's syndicates 623 or 2623 are citizens of the state of Wisconsin.

7. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(a)(2), because it is between citizens of one state and citizens or subjects of a foreign state, the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and there is complete diversity between all Plaintiffs and all Defendants.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1392(a) and (b).

## GENERAL ALLEGATIONS

9. On May 15, 2012, Plaintiffs sold their ownership interests in Packerland Whey to Packerland Holding on the terms stated in the Acquisition Agreement of that same date. Plaintiffs Daniel J. Ratajczak, Jr. and Scott A. Ratajczak were the owners of the shares sold pursuant to the Acquisition Agreement; Daniel's wife Angela and Scott's wife Elizabeth also signed the Acquisition Agreement in their capacities as the spouses of the owners of Packerland Whey.

10. Also on or as of May 15, 2012, Defendants underwrote and issued the Policy, Number W0009312PYBW. Plaintiffs are Named Insureds under the Policy as the Equity Interest Holders in Seller who signed the Acquisition Agreement.

11. The Policy insures and indemnifies Plaintiffs for liability for Breach of Insured Warranties (Item 7), including but not limited to, the general and fundamental warranties in Articles III and IV of the Acquisition Agreement. The

Policy provides for a $10,000,000 aggregate limit of liability with a self-insured retention of $1,500,000.

12. On or about December 6, 2012, Peter Lehman, the chairman of the board of Packerland Holding, confronted Daniel Ratajczak, terminated his employment with Packerland Holding, and accused him of wrongdoing in connection with the activities of Packerland Whey. This confrontation was the first time that Daniel or any of the other Sellers learned that there was any controversy with the Buyer respecting their sale of Packerland Whey stock to Packerland Holding under the Acquisition Agreement.

13. On or about December 13, 2012, representatives of the Buyer provided the Sellers with a draft complaint and a proposed settlement agreement. Shortly after receiving the draft complaint and proposed settlement agreement, the Sellers, through their lawyers, engaged in business negotiations in an effort to resolve the dispute with the Buyers and the Buyers' financiers.

14. The negotiations became more intense on or about the morning of December 24, 2012, when Buyers directly through counsel advised counsel for the Sellers that any settlement would have to be completed, including signed settlement agreement and transfer of funds, if at all, by the end of calendar 2012, and specifically on or before December 28, 2012.

15. Upon learning of the fixed deadline requirement imposed by the Buyers and their lenders, on December 24, 2012, Sellers immediately provided specific written notice of this claim to Defendants ("Notice"), setting forth the details

of the claim and the urgency of the situation. The Notice letter specifically stated as follows:

 

16. Defendants responded to the Notice by email Thursday, December 27, 2012 at 12:44 pm as follows:

17. A few hours later, on Thursday, December 27, 2012 at 5:12 PM, as per Defendants request, Sellers fully complied by immediately providing 53 documents, all the settlement correspondence that had occurred to that date:

> From: Kimberly S. Vitrano
> Sent: Thursday, December 27, 2012 5:12 PM
> To: 'William.Clarke@beazley.com'
> Cc: Mark M. Leitner; Allison A. Schmidt
> Subject: RE: Equity Holders in Packerland Whey Products / Policy W0009312PYBW
>
> There are 53 attachments linked to this e-mail:
> http://syfsr.com/?e=8BB233F3-C92F-4C1A-9A03-4C6042A2E9B0
>
> ---
>
> Dear Mr. Clarke:
>
> In response to your email, Mark Leitner asked me to collect the settlement correspondence exchanged thus far concerning Dan and Angie Ratajczak. Please click on the link provided to access the files. Without waiving any of our rights under the policy, we are continuing to look for documents that fall under your request.
>
> If you have any trouble opening the link please call me at (414) 271-7100, extension 134.
>
> Best regards,
> Kim Vitrano
>
> **Kimberly S. Vitrano**
> PARALEGAL
>
> KRAVIT • HOVEL & KRAWCZYK, s.c.
> 825 N. Jefferson, Milwaukee, WI 53202-3737
> 414-271-7100 x134 | fax 414-271-8135
> ksv@kravitlaw.com | www.kravitlaw.com

18. Plaintiffs heard nothing from Defendants, and continued to urgently work to settle to meet Buyer's deadline. The attachments sent by Plaintiffs to Defendants on December 27 included a draft settlement agreement and all of the back and forth communications detailing what was occurring in settlement discussions. Defendants did not respond. Defendants did not seek to be involved in the urgent settlement negotiations and gave no instructions to their insureds. The next day, December 28, 2012 at 2:57 PM, Plaintiffs again advised Defendants that settlement was imminent, and enclosed a "nearly final settlement agreement":

> From: Stephen Kravit
> Sent: Fri 12/28/2012 02:57 PM
> Rcvd: Fri 12/28/2012 02:57 PM
> To: Kimberly S. Vitrano; William.Clarke@beazley.com
> CC: Mark M. Leitner; Allison A. Schmidt
> Subject: RE: RE: Equity Holders in Packerland Whey Products / Policy W0009312PYBW
>
> ==========================================
>
> Mr. Clark. At the insistence of the claimants, we are required to settle today as you have seen from attachments from yesterday. Attached is the nearly final settlement agreement (confidential). As part of our requirement to mitigate, my clients have approved this agreement. The missing term is the amount. The amount that will be paid today in cash is $9,741,222.94 of your Insureds' personal funds. The matter will be fully settled and the matters insured are released and indemnified.
>
> Under separate cover, my paralegal is providing the flurry of today's settlement emails before agreement was reached. I will provide a final agreement when I have signatures and the final document. All attachments may not come today but should be available by Monday.
>
> Steve Kravit

19. Notwithstanding all of Plaintiffs' communication and warnings, Defendants did not communicate or participate in the settlement, which was in fact signed and the money transferred at 4:59 PM on December 28, 2012. Only after the settlement was consummated and confirmed did Plaintiffs hear from Defendants, on December 28, 2012 at 6:45 PM (one hour and forty five minutes after the settlement was consummated). In that communication, Defendants stated that Beazley was not in a position to consent to the settlement that the Sellers intended to enter into, and that "[b]ecause the Insured has entered into a settlement without Underwriters' participation and consent as required by the Policy, **the insured should proceed as a prudent uninsured**." (Emphasis added.)

> From: William Clarke (William.Clarke@beazley.com)
> Sent: Fri 12/28/2012 06:45 PM
> Rcvd: Fri 12/28/2012 06:45 PM
> To: Stephen Kravit; Kimberly S. Vitrano
> CC: Mark M. Leitner; Allison A. Schmidt
> Subject: RE: RE: Equity Holders in Packerland Whey Products / Policy W0009312PYBW
>
> ==========================================
>
> Mr. Kravit:
>
> Thank you for forwarding the group of correspondence (which is more than 100 items) to us in connection with the submitted potential claim and in response to our request.
>
> As I am sure you can appreciate, having only received notification of a potential claim after London business hours on Christmas Eve and only receiving the beginning of the settlement-related correspondence late yesterday afternoon Underwriters are not in a position to consent to the settlement referenced in your e-mail below. In this regard, we would like to call to your attention Section X.D. of the Policy which states the rights and responsibilities of both Underwriters and the Insured as it relates to settlement.
>
> Underwriters will continue to evaluate the materials that have been submitted to us over the past 24 hours and will offer the insured a coverage opinion in due course. Because the insured has entered into a settlement without Underwriters' participation and consent as required by the Policy, the insured should proceed as a prudent uninsured.
>
> Finally, Underwriters continue to reserve their rights under the Policy and any applicable law.

20. The plain and unmistakable meaning of Defendants' December 28, 2012 communication was to advise the Sellers that Beazley intended to, and was in fact, denying coverage for the Sellers claim under the Policy.

21. The time deadline placed on Sellers by the Buyers and their lenders was real. Sellers did everything reasonably practicable to comply with the terms of the notice and settlement provisions of the Policy. Sellers were required to, and did in fact comply with, §XII (B) of the Policy, to "take all reasonable action necessary or reasonably advisable to mitigate any Loss or potential Loss."

22. Defendants deny they have failed to follow any provision of the Policy, but if it is determined that there was an issue with the Notice, Defendants have not been prejudiced. Even if Defendants had been involved in the negotiations two weeks earlier, it would have been impossible for Defendants to obtain a more favorable result in this settlement than was in fact obtained by the Sellers.

**FIRST CLAIM FOR RELIEF**
**DECLARATORY JUDGMENT**

23. Plaintiffs reallege Paragraphs 1-22 as if set forth in full.

24. Based on Defendant's December 28, 2012 directive to the Plaintiffs that they should "proceed as a prudent uninsured," there exists a case and an actual controversy between the Plaintiffs and the Defendants within the meaning of the Declaratory Judgment Act, 28 U.S.C. § 2201.

25. Upon information and belief, Plaintiffs believe that Defendants may dispute coverage under the Policy for reasons other than the consent to settlement clause, and in the event that Defendants do so, there will be additional actual controversies between the Plaintiffs and the Defendants that give this Court jurisdiction under the Declaratory Judgment Act.

WHEREFORE, plaintiffs demand judgment as follows:

1. A declaration that the Policy provides coverage for the payments made and damages suffered by the Sellers under the settlement entered into between the Sellers and the Buyers on December 28, 2012, and that the Limit of Liability under the Policy should be paid to Plaintiffs;

2. An order that the Defendants shall pay the reasonable attorney fees and costs of the Plaintiffs incurred in bringing this action; and

3. Such other and further relief as this Court deems proper.

**DEMAND FOR A TWELVE PERSON JURY
AS TO ALL ISSUESSO TRIABLE IN THIS ACTION**

KRAVIT, HOVEL & KRAWCZYK S.C.


*/s/ Stephen E. Kravit*
Stephen E. Kravit
Mark M. Leitner
Attorneys for Plaintiffs

Kravit, Hovel & Krawczyk s.c.
825 North Jefferson - Fifth Floor
Milwaukee, WI 53202
(414) 271-7100 - Telephone
(414) 271-8135 - Facsimile
kravit@kravitlaw.com

Dated: January 14, 2013