UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DANIEL J. RATAJCZAK, JR.,
SCOTT A. RATAJCZAK,
ANGELA RATAJCZAK, and
ELIZABETH RATAJCZAK,

        Plaintiffs,

   v.                                           Case No. 13-C-045

BEAZLEY SOLUTIONS LIMITED and
BEAZLEY FURLONGE LIMITED,

        Defendants.

---

### DECISION AND ORDER GRANTING DEFENDANT
### BEAZLEY FURLONGE LIMITED'S MOTION TO DISMISS

---

Plaintiffs, Daniel J. Ratajczak, Jr., Scott A. Ratajczak, Angela Ratajczak, and Elizabeth Ratajczak (the Ratajczaks) filed this action for declaratory judgment against Defendants Beazley Solutions Limited and Beazley Furlonge Limited (hereinafter "Beazley Solutions" and "Beazley Furlonge"). The Ratajczaks seek a declaration of the extent and existence of coverage under a warranty and indemnity policy issued on behalf of the Lloyd's underwriting members of Lloyd's Syndicates 623 and 2623 by Beazley Solutions, acting as an appointed representative of Beazley Furlonge. This court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 as there is complete diversity between the parties and the matter in controversy exceeds $75,000. On March 15, 2013, Beazley Furlonge filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) and Beazley Solutions filed its answer. That same day, the Ratajczaks filed a motion to strike Defendants' pleadings and further moved for an entry of default judgment. In the court's previous

decision denying the Ratajczaks' motion to strike, the court directed Defendants to comply with Wis. Stat. § 618.47(1), which imposes certain procedural obligations on unauthorized insurers doing business in Wisconsin before filing a defense to court action. On June 17, 2013, Defendants submitted a declaration from Attorney Joseph P. Gunset, the General Counsel of Lloyd's America, the United States subsidiary of Lloyd's in London. He states in his declaration that the Lloyd's Syndicates, as of March 31, 2013, had over $90 million in the US Surplus Lines Trust Funds of the Beazley Underwriters available to cover any potential judgment in Plaintiffs' favor. (Gunset Decl. ¶ 9.) This amount is more than sufficient to cover the amount of the Plaintiffs' claim under the policy. (*See* Compl. ¶ 11.) Having satisfied the statutory provisions, I turn now to Beazley Furlonge's motion to dismiss.

## BACKGROUND

Plaintiffs Daniel and Scott Ratajczak owned stock in Packerland Whey Products, Inc. On May 12, 2012, they sold their ownership interests in Packerland Whey to Packerland Whey Intermediary Holding Group, Inc, through an Acquisition Agreement. Angela and Elizabeth Ratajczak both signed the Acquisition Agreement in their capacities as the respective spouses of Daniel and Scott Ratajczak. In connection with the asset transfer, the Ratajczaks allege that Beazley Solutions and Beazley Furlonge underwrote and issued a Seller's Warranty and Indemnity Insurance Policy (the Policy) indemnifying the Ratajczaks for liability for any breach of insured warranties included in the Acquisition Agreement. The Policy stated that Beazley Solutions is the appointed representative of Beazley Furlonge, which is the manager of Lloyd's Syndicates 623 and 2623. (Compl. Ex. A at 1, ECF No. 2.) Beazley Solutions had authority to enter into insurance contracts

2

on behalf of the Lloyd's underwriting members of the Syndicates at Lloyd's. (*Id.*) The Policy provided for a $10 million aggregate limit of liability.

On approximately December 6, 2012, Peter Lehman, the chairman of the board of Packerland Holding accused Daniel Ratajczak of wrongdoing in connection with the activities of Packerland Whey and terminated his employment with Packerland Holding. Shortly after, representatives from Packerland Holding approached the Ratajczaks with a draft complaint and a proposed settlement agreement. Packerland Holding representatives advised the Ratajczaks' attorney that any settlement had to be completed by December 28, 2012. In light of this deadline, the Ratajczaks notified Defendants of Packerland Holding's claim. Ultimately, the Ratajczaks entered into a settlement agreement with Packerland Holding's representatives on December 28, paying over $9 million from their personal funds. (Compl. ¶ 18.) Beazley notified the Ratajczaks, after they had already competed the settlement negotiations, that it could not consent to the proposed settlement and advised that they should proceed as a "prudent uninsured." (*Id.* ¶ 19.) The Ratajczaks assert that they fully complied with the Policy's notice and settlement provisions and seek declaratory relief that the Policy provides coverage for the payments made under the settlement. They seeks a determination that both Beazley Solutions and Beazley Furlonge are liable under the Policy.

**DISCUSSION**

Beazley Furlonge argues that it owes no duty to indemnify the Ratajczaks for any loss under the terms of the Policy. Based on the express terms of the Policy, Beazley Furlonge contends, the Ratajczaks fail to state a claim against it.

Dismissal under Rule 12(b)(6) is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558

3

(2007). To state a claim, a complaint must contain sufficient factual matter "that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "[T]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. To survive dismissal, a plaintiff "must plead some facts that suggest a right to relief that is beyond the 'speculative level.'" *Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011) (quoting *In re marchFIRST Inc.*, 589 F.3d 901, 905 (7th Cir. 2009)). In considering a motion to dismiss, the court construes the allegations in the complaint in the light most favorable to the plaintiff, accepts all well-pleaded facts as true, and draws all inferences in favor of the non-moving party. *Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529, 533 (7th Cir. 2011).

In deciding a motion to dismiss, district courts have discretion to consider certain documents outside the pleadings without converting the motion under Rule 12(b)(6) to a motion for summary judgment under Rule 56. *Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998). In particular, documents submitted with a motion to dismiss may be considered part of the pleadings if they are "referred to in the plaintiff's complaint and are central to his claim." *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) (internal quotation marks omitted); *see also Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002); *Wright v. Associated Ins. Cos., Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994).

Beazley Furlonge states that the duty to indemnify the Ratajczaks is expressly limited by the Policy to Beazley Solutions. The Policy insuring clause states that the "Underwriters shall indemnify the Insured." (Compl. Ex. A at 4, ECF No. 2.) The term "underwriters" is defined as Beazley Solutions and does not include Beazley Furlonge. (*Id*. at 1.) Thus, Beazley Furlonge has no contractual duty to indemnify the Ratajczaks against a loss per the express terms of the policy.

4

The Ratajczaks argue that the contract term is ambiguous when read in the context of the whole policy. Policy language is ambiguous "if it is susceptible to more than one reasonable interpretation." *Danbeck v. Am. Family Mut. Ins. Co.*, 2001 WI 91, ¶ 10, 629 N.W.2d 150. In addition, an otherwise clear and unambiguous provision "may be found ambiguous in the context of the entire policy." *Folkman v. Quamme*, 2003 WI 116, ¶ 19, 665 N.W.2d 857.

The Policy explains the relationship between Beazley Furlonge, Beazley Solutions, and the Syndicates at Lloyd's:

> Beazley Solutions Limited is a service company that is part of the Beazley Group. We [i.e. Beazley Solutions] have authority to enter into contracts of Insurance on behalf of the Lloyd's underwriting members of Lloyd's syndicates 623 and 2623 which are managed by Beazley Furlonge Limited. Beazley Solutions Limited is an Appointed Representative of Beazley Furlonge Limited which is authorized and regulated by the UK Financial Services Authority (ref 204896) in its capacity as insurer.

(*Id.*) The Ratajczaks point out that the notice of claim provisions requires the Ratajczaks to provide notification to Beazley Furlonge, not Beazley Solutions. Additionally, a "no knowledge" letter that Daniel Ratajczak had to sign in connection with the issuance of the Policy was addressed to Beazley Furlonge per the form provided. (*Id.* at 27.)

The fact that the Policy stated that notification was to be directed to Beazley Furlonge does not render the provision limiting the duty to indemnify to Beazley Solutions ambiguous. The Policy explained that Beazley Solutions was acting on behalf of the Lloyd's Syndicates and was an appointed representative of Beazley Furlonge. Furthermore, the Policy clearly limited the definition of the term "underwriters" to Beazley Solutions and obligated the underwriters to indemnify the Ratajzcaks against loss per the policy provisions. There is no inherent conflict between the indemnification and notice provisions in the Policy that creates an ambiguity. Because there is no ambiguity here, the terms are to be enforced as written. *See Folkman*, 2003 WI at ¶ 13 ("If there

5

is no ambiguity in the language of an insurance policy, it is enforced as written, without resort to rules of construction or applicable principles of case law.").

The Ratajczaks also argue that Beazley Furlonge is contractually bound to indemnify under principles of agency law and respondeat superior. First, the cases on which the Ratajczaks rely for their argument that Beazley Furlonge may be held vicariously liable are inapposite to the facts of this case. The two entities do not fit within the traditional employer/employee relationship to which the respondeat superior doctrine applies. It is also important to note that the case is about contractual, not tort, liability. Thus, cases like *Kerl v. Dennis Rasmussen, Inc.*, 273 Wis. 2d 106, 131-32, 682 N.W.2d 328 (2004) (holding that a franchisor could not be held vicariously liable for the acts of its franchisee because it did not exercise "day-to-day" control over the franchisee's business akin to an employer's control over his employees), have no bearing on the issue.

Secondly, concerning the Ratajcaks' agency argument, the Ratajczaks mistakenly identify Beazley Furlonge as a principal. The circumstance presented here is that Beazley Furlonge, an agent of the syndicates at Lloyd's, appointed the subagent Beazley Solutions to underwrite insurance policies on behalf of a shared principal. Under agency principles, an agent acting for a principal who is authorized to act by someone else may appoint a subagent. If this is the case, then the agent will have "the responsibility of a principal" with respect to the subagent. Restatement (Second) of Agency § 5 cmt. a (1958). The legal responsibility of an agent for a subagent's actions only go so far, however. The Restatement comment further explains as follows:

> A subagent, as defined herein, is a person for whose conduct the appointing agent is responsible to the principal (see § 406), and in some cases is responsible to the person with whom the subagent deals. See § 362. *These legal consequences do not follow when the appointing agent's function is merely to appoint a person to act for the principal*, in which case the appointing agent is liable only if negligent in making the appointment. See § 405. In such a case, the person so appointed is not different from any other agent of the principal, and the fact that he was appointed by a superior agent rather than by the principal becomes immaterial.

6

Restatement (Second) of Agency § 5 cmt. b (emphasis added). In addition, the general rule in Wisconsin is that where an agent merely contracts on behalf of a disclosed principal, the agent does not become personally liable to the other contracting party unless there is evidence that the agent intended "to substitute or superadd his liability." *See Theuerkauf v. Sutton*, 102 Wis. 2d 176, 188, 306 N.W.2d 651 (1981) (quoting *Hooper v. O.M. Corwin Co.*, 199 Wis. 139, 146, 225 N.W. 822 (1929)).

Nothing in the plain language of the Policy supports the Ratajzcak's claim that Beazley Furlonge agreed to indemnify them for any losses covered by the Policy. Instead, the Policy disclosed the nature of the agency relationship between the syndicates at Lloyd's and the Defendants. The Policy outlined that Beazley Furlonge was merely the appointing agent for Beazley Solutions and the duty to indemnify was expressly limited to Beazley Solutions. Finally, there is no allegation in the Ratajzcaks complaint that Beazley Furlonge was negligent in appointing Beazley Solutions. Even if there was, it would not give rise to liability to the Ratajzcaks, since Beazley Furlonge was not their agent in any event. Liability under the Policy, if there should be any, can only be established on the part of Beazley Solutions, the syndicates at Lloyd's, or both. Accordingly, Beazley Furlonge's motion to dismiss is **granted**. The Clerk is directed to set the matter on the court's calendar for a Rule 16 telephone scheduling conference.

**SO ORDERED** this 17th day of June, 2013.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court