UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DANIEL J. RATAJCZAK, JR., et al.,

        Plaintiffs,

v.                                                  Case No. 13-C-45

BEAZLEY SOLUTIONS LIMITED, et al.,

        Defendants.

---

## DECISION AND ORDER

---

In this insurance coverage action, Plaintiffs allege that Beazley Solutions, the Defendant underwriter, breached a duty to provide coverage for a lawsuit filed against the Plaintiffs. Presently before me is a motion to exclude two of the Defendant's experts. For the reasons given below, the motion will be denied.

Plaintiffs sold their business in 2012 pursuant to a stock purchase agreement. Under that agreement, the Plaintiffs issued a number of representations and warranties about their company, including a representation that the company was in compliance with its contracts governing one of its key products, called WPC-34, and that the company used urea only in manufacturing a product other than WPC-34. Urea is high in nitrogen and can create an illusion that animal feed has higher protein levels than it really does. When the buyers eventually found out that the company had indeed been using urea in WPC-34, a product that represented some two-thirds of the company's sales, they threatened a lawsuit by drafting a complaint (never filed) alleging that the secret use of urea violated the company's contracts, in violation of the sellers' representations and warranties.

Plaintiffs notified Beazley, which had provided insurance in connection with the sale, but Beazley declined to participate in settlement talks. Within a short time, the Plaintiffs settled the dispute on their own by refunding some $15 million of the purchase price. They now seek coverage under the policy they had with Beazley.

**I. Motion to Exclude Witnesses**

**A. Relevance**

The present dispute involves two witnesses Beazley proposes to offer at trial. Dr. Kertz is an animal nutritionist who would explain to the jury how urea, when added to whey protein, causes false protein readings and otherwise affects the health of calves. Mr. Broyles is an expert in regulatory compliance who would explain industry practices about ingredient information and how the use of urea could result in deceiving buyers, in particular because a product labeled as WPC implies that it does *not* contain added urea. In short, the testimony could aid the jury in understanding the context of the Plaintiffs' actions.

Plaintiffs seek to exclude the experts on the grounds of irrelevance. First, they argue that nothing in the settled lawsuit had anything to do with animal health or regulations governing animal feed. The general rule is that after an insurer denies coverage, the only relevant issue in the subsequent coverage suit what the claims actually alleged, not what *might* have been alleged. That is, the key question is "how the parties to the settlement viewed the relative merits of the plaintiff's claim at the time of the settlement and whether, if the insured settled without the carrier's approval, the settlement amount was reasonable." 2 Allen D. Windt, Insurance Claims and Disputes § 6:31 (6th ed.) Since the parties had not considered issues relating to animal health or regulations at the time of settlement, those issues were not part of the settlement calculus and are therefore irrelevant.

2

Second, Plaintiffs note that relevant policy language excludes coverage only for *actual* knowledge of false representations. Because neither of the experts can opine about the Plaintiff's subjective mental state at the time they made the relevant representations, their testimony is irrelevant for that reason as well. At best, they could testify about constructive knowledge or what might generally have been known in the industry, but they could not be expected to testify about what the Plaintiffs actually knew at the time. Since the policy only excludes coverage for what was *actually* known, their testimony must be irrelevant.

Neither objection is persuasive. As the Defendants explain, the purpose of the testimony is to inform the jury about the general state of affairs in the dairy feed industry and why the use of urea would have an impact on the value of the product the company produced. It is true that neither expert has the ability to read the Plaintiffs' minds, but that misses the point of expert testimony in the first place. Experts are not *direct* witnesses of disputed facts; instead, they enlighten a jury to allow it to determine, based on other testimony, which version of the disputed facts is more credible. Here, it is reasonable to conclude that the experts will testify about matters that the Defendants believe make it more likely that the Plaintiffs *did* have actual knowledge about their company's use of urea. Most concretely, they could explain why the Plaintiffs might have used urea and also why they would have concealed it. This is commonplace evidence of motive, which speaks directly to the question of what the Plaintiffs actually knew. Similarly, the right expert could also testify about what was generally known in the industry. If an expert credibly testifies that most people in the industry would have known about urea use, a jury could draw an inference about the Plaintiffs' knowledge even though the expert was not a direct witness to their actual mental state. In short, a jury equipped with that kind of information might draw the inference that the Plaintiffs had reason

3

to cover up their company's use of urea, and that it was unlikely that they did not understand their company *was* using urea. The fact that the underlying dispute did not involve animal health or regulations does not mean such topics are irrelevant to the question of knowledge.

Plaintiffs suggest that Beazley is attempting to relitigate the underlying dispute or to recast the nature of the case by dragging animal health and industry regulations into this case. But even if it is true that the merit of the underlying claim is not relevant to the coverage dispute, Beazley has more than adequately explained how its experts' testimony is directly relevant to the question of the Plaintiff's knowledge. In Plaintiffs' view, the only relevant testimony would come from the Plaintiffs themselves, because they are the only ones with direct evidence of their state of actual knowledge at the time. But juries are not required to assess credibility in a vacuum, as though a case must turn on direct evidence alone, particularly the Plaintiffs' own denials. Instead, juries often rely on common sense to consider motive and context. In a standard fraud case, an expert is usually not required to explain why or how someone might have told a lie because the motivation is obvious. But in a more complicated case, an expert can explain how the fraud would have worked, and why certain factors are more important than others. The Defendants are entitled to have experts explain to a lay jury the context of the company's use of urea, and that information will allow the jury to decide whether they believe the Plaintiffs' claims that they lacked actual knowledge about urea use and other matters.

## B. *Daubert*

Plaintiffs also argue that the opinions of the two proposed experts are not based on reasonable scientific principles. They first argue that many of Broyles' opinions, found in his expert report, do not cite to scholarly opinions for support. Many of Broyles' opinions conclude that

4

Plaintiffs violated model regulations and guidelines of the Association of American Feed Control, a benchmark for standards throughout the industry. Broyles has more than fifty years' experience with the AAFC, and has been involved in the food business for decades. His opinions appear to be based largely on his own experience. The fact that he might not be able to cite scholarly articles for support could go to the weight the jury might give his evidence, but it does not suggest it is *per se* unreliable. In fact, it is difficult to see how many of his opinions would require scholarly support, since they are the kind of opinion that one gains through experience rather than study.

Plaintiffs also protest that Broyles, a non-lawyer, is testifying improperly about legal conclusions because he states that the Plaintiffs' practices violated laws and regulations. Yet one need not be a lawyer to testify about industry practices and simple regulations. Regulations, after all, are designed to be followed by laymen without constant recourse to legal counsel. For example, the criminal code is interpreted countless times every day by non-lawyer citizens and police officers, none of whom need a law degree to conclude what conduct constitutes shoplifting, kidnaping, or speeding. Simply concluding that a given practice violates a regulation is not the exclusive purview of attorneys and judges unless there is something more complex involved. In the event the expert's testimony strays into legal conclusions (which is unlikely, given the Defendants' subsequent narrowing of the expert's testimony), the court can put a stop to the testimony or offer a cautionary instruction.

Similarly, the Plaintiffs argue that Dr. Kertz does not offer scholarly support for his opinions apart from his own experience. In addition, Dr. Kertz did not conduct independent tests to support his conclusions. But again, the bulk of his opinion involves an explanation of why using urea to boost protein measurements could result in deception to customers who were expecting a higher

5

content of real protein. His conclusions are based on animal physiology and nutrition (his Ph.D. is in animal nutrition), rather than investigatory science. And recall that the general purpose of the testimony is to inform a jury about what a layman in the industry might have known, i.e., why the use of urea might have been beneficial from a profit perspective but not from a nutrition perspective. That will presumably not require detailed scientific theories or scientific information beyond basic animal nutrition and physiology.

In sum, the motion to exclude will be denied.

**II. Motion to Seal**

Plaintiffs also filed a motion to seal certain portions of their memorandum in support of their motion to exclude the experts. The information to be sealed consists of information designated as confidential that arose out of a private board meeting in which the officers of the company discussed their potential for liability for the company's use of urea, as discussed above. I am satisfied that the information is indeed confidential and that good cause has been shown to have the material sealed. The motion will therefore be granted.

**III. Motion to Determine Fees**

Finally, the Defendant asks the Court to determine reasonable attorney's fees incurred in connection with its successful motion to compel. (ECF No. 132.) A district court enjoys "wide latitude" in establishing attorney fee awards. *Divane v. Krull Elec. Co.,* 319 F.3d 307, 314 (7th Cir. 2003). Beazley filed a motion to compel responses to its questions, which the Plaintiffs opposed by filing a motion seeking a protective order. Beazley now seeks some $16,787 in attorneys' fees for 47 hours' worth of attorney time. The Plaintiffs object that 47 hours is excessive given the limited nature of the discovery dispute.

Beazley argues that the time was reasonable given that it had to prepare two rounds of briefs, in addition to all the other filings. But 47 hours is more than a week's worth of attorney time, and even if there were two rounds of briefs, the matters were not the sort that required four attorneys to conduct extensive research, nor did they require rumination at the most senior levels of large law firms. The central issues were whether relevance was a legitimate reason for counsel to have instructed a witness not to answer, and whether the questions posed were of a harassing nature. The briefs did not contain dozens of citations to precedent (nor did they need to), nor did they even touch on matters of cutting-edge or unusual aspects of the law. "If a motion to compel consists primarily of facts with minimal or no citations to case law, a reduction in the number of hours expended in preparing and researching that motion is oftentimes warranted." *Romary Associates, Inc. v. Kibbi LLC,* No. 1:10-CV-376, 2011 WL 4948834, at *4 (N.D. Ind. Oct. 18, 2011) (collecting cases). It is difficult to see how 47 hours would be required to address the matters posed by this run-of-the-mill discovery dispute. Accordingly, I will reduce the award to $8,000.

**IV. Conclusion**

The motion to seal is **GRANTED**. The brief, as well as Exhibit C to that brief, may remain on the docket in redacted form. (ECF No. 150.) The motion to exclude experts is **DENIED**. The motion to determine the fee award is **GRANTED**. The attorney's fees due to Beazley resulting from its successful motion shall be $8,000.

**SO ORDERED** this 15th day of September, 2015.

    /s William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court